FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

03 JUN 17 PM 3:46

AMADO NAVAS,                                          )
                                                     )
                    Plaintiff,                       )
                                                     )
            v.                                       )   Case No.  8:03cv487-T-23 (TGW)
                                                     )   Magistrate Judge:  Thomas G. Wilson
CISCO SYSTEMS INC., BRUCE BASTIAN,                   )
CHUCK ROBBINS, DAVID CAMPBELL, AND                   )
RICK JUSTICE,                                        )
                                                     )
                    Defendants.                      )
                                                     )

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND TO**
**STAY PROCEEDINGS PENDING ARBITRATION**

Defendants Cisco Systems, Inc. ("Cisco") and Bruce Bastian, Chuck Robbins, David

Campbell and Rick Justice (collectively, the "Individual Defendants"), by and through their

undersigned attorneys, hereby submit this Memorandum in Support of Defendants' Motion to

Compel Arbitration and to Stay Proceedings Pending Arbitration.

## I. INTRODUCTION

The facts underlying this dispute are not complex.  Plaintiff, Amado Navas ("Mr.

Navas"), is an employee of Cisco.  He began his employment with Cisco on August 23, 1999.

Prior to, and as a condition of, beginning work at Cisco, Mr. Navas executed an arbitration

agreement that requires submission to arbitration of "any and all disputes and claims arising from

and relating to [Mr. Navas's] employment with [Cisco]."  The agreement requires that any such

dispute be submitted to binding arbitration with the American Arbitration Association ("AAA").

Notwithstanding his agreement to arbitrate, Mr. Navas **filed** his Complaint in this Court alleging that he was subjected to discriminatory treatment by Cisco and the Individual Defendants on the basis of his national origin.  All of the claims in Mr. Navas's Complaint arise from and relate to Mr. Navas's employment with Cisco.  Mr. Navas's claims, therefore, are subject to the parties' arbitration agreement.

Counsel for Cisco repeatedly has requested that Mr. Navas dismiss this lawsuit and file a demand for arbitration.  Mr. Navas has refused to do so and instead threatens to "go to the press" with his allegations if he is "forced to arbitrate."  Thus, Cisco has been forced to file the instant motion.

## II. STATEMENT OF FACTS

On August 18, 1999, prior to, and as a condition of, beginning his employment with Cisco, Mr. Navas signed an "Agreement to Arbitrate Employment Disputes" (the "Arbitration Agreement").  *See* Affidavit of Paula Hughes in Support of Defendants' Motion to Compel Arbitration and to Stay Proceedings ("Hughes Aff."), ¶ 4, Exhibit B.  The executed Arbitration Agreement provides that:

> I understand that any and all disputes and claims arising from and relating to my employment with [Cisco], whether the dispute or claim arises in tort or contract; pursuant to statute, regulation or otherwise, now in existence or which may in the future be enacted, amended or judicially recognized, as well as the following:
>
> - claims for breach of contract or contractual obligation whether such alleged contract or obligation be oral or written or express or implied by fact or law;
>
> \*   \*   \*
>
> - claims of discrimination under any and all state and federal statutes that prohibit discrimination in employment . . .

3688383

Arbitration Agreement, at 1.

The Arbitration Agreement further provides that:

> I understand and agree that by signing **this Agre**ement, I am
> expressly waiving any and all rights and **benefits conf**erred on me
> by federal, state or local law to a trial **before a court** or jury or
> before a government agency regarding **any dispute** and claim
> which I now have (whether or not known **or suspecte**d) or which I
> may in the future have with [Cisco].

*Id.* at 2.

Mr. Navas executed the Arbitration Agreement **directly benea**th the following paragraph:

> I acknowledge that I have read this Agreement **and I** understand its
> terms and that by signing it, I am **acknowled**ging at-will
> employment and am waiving all rights to **a trial bef**ore a court or
> jury of any and all disputes and claims **regarding my** employment
> with [Cisco] or the termination of thereof, **except** as otherwise
> noted herein, that now exist or may in the **future exist** or be known
> or suspected by me.

*Id.* at 3.

Mr. Navas began working at Cisco on August 23, **1999. Hugh**es Aff., ¶ 3, Exh. A.  In his
complaint, Mr. Navas alleges that in May 2001 he received **a racially** derogatory e-mail from his
Cisco supervisor.  (Complaint ¶ 16.)  Nearly one year **later, in Feb**ruary 2002, and after a poor
performance review, Mr. Navas complained to upper **management th**at he was being subjected to
a racially hostile work environment.  (Complaint ¶ **30.)  Cisco** management investigated
Mr. Navas's claims and found them to be unsubstantiated.  **Mr.** Navas disagreed with this
finding.

The following year, on March 18, 2003, Mr. Navas **filed the** instant action and thereafter
served each of the Defendants.  Mr. Navas's Complaint **alleges th**ree "counts" against Cisco
alone and one "count" against both Cisco and the Individual **Defend**ants. Mr. Navas alleges that:

(1) Cisco denied him "promotional opportunities" on the basis of "his race and/or ethnicity" thereby violating Title VII ("Count I") (Complaint ¶ 54);

(2) Cisco and the Individual Defendants violated 42 U.S.C. § 1981 "[b]y engaging in a concerted effort to harass and discredit Mr. Navas, by fostering a hostile environment . . . in direct violation of Florida [sic] law" ("Count II") (Complaint ¶ 56);

(3) Cisco breached its contractual obligations by allegedly "failing to follow its own personnel policies and procedures on evaluating, promoting, and providing equal employment opportunity . . ." ("Count III") (Complaint ¶ 58); and

(4) Cisco "purposely" restricted Ms. [sic] Navas's promotional opportunities in violation of Florida law ("Count IV") (Complaint, ¶ 61).

Defense counsel has attempted to obtain Mr. Navas's agreement to dismiss his Complaint and abide by the Arbitration Agreement. Defense counsel first telephoned Mr. Navas on April 14, 2003, and then again on April 15, 2003, to remind him of his obligation to arbitrate his employment dispute with Cisco. Defense counsel followed these telephone calls with a letter to Mr. Navas on April 15, 2003 reminding him once again of the Arbitration Agreement and his obligation to arbitrate his employment dispute with Cisco. Affidavit of Frederick H. L. McClure in Support of Defendants' Motion to Compel Arbitration and to Stay Proceedings ("McClure Aff."), ¶ 3. With the April 15, 2003 letter, defense counsel provided Mr. Navas a copy of the executed Arbitration Agreement. Id. at ¶ 5, Exh. A.

By letter dated April 17, 2003, Mr. Navas refused to arbitrate and advised defense counsel that if he is "ordered by the court to go to arbitration . . . [he] will immediately release to all the major news media networks" his allegations of discrimination, among other unfounded allegations relating to Cisco's financial data. McClure Aff., ¶ 6, Exh. B.

- 4 -

## III. ARGUMENT

A. **Defendants Are Entitled To An Order Compelling Plaintiff to Arbitrate the Instant Claims.**

    1. <u>Scope of Review</u>.

Pursuant to the Federal Arbitration Act ("FAA"), when analyzing Defendants' motion to compel arbitration, the Court's role is extremely limited. *See* 9 U.S.C. §§ 3 and 4. Review and analysis are restricted to three issues:

    1.    Whether a binding arbitration agreement exists between the parties;

    2.    Whether Plaintiff's claims fall within the scope of the arbitration agreement; and

    3.    Whether the right to arbitration has been waived.[1]

If the Court is satisfied that no substantial issue exists regarding either the making or scope of the arbitration agreement, the Court "shall" grant the motion to compel arbitration. 9 U.S.C. § 3; *Administrative Mgmt. Servs., Ltd., Inc. v. Royal Am. Managers, Inc.*, 854 F. 2d 1272, 1278-79 (11th Cir. 1988) (holding stay of proceedings is mandatory under the Federal Arbitration Act; *Jim Burke Auto., Inc. v. Murphy*, 739 So. 2d 1084 (1999) (same). The district court has no discretion in this regard. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

---

[1] Defendants moved to compel arbitration in response to Plaintiff's Initial Complaint; therefore, a waiver is not an issue in this case.

3688383

2.    The Instant Arbitration Agreement is Enforceable Under the Federal Arbitration Act.

The FAA provides that:

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. §§ 1 *et seq.* Thus, the validity of an agreement to arbitrate generally is governed by the FAA. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995); *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20 (1991). Enacted in 1925 to reverse longstanding judicial hostility toward arbitration, the FAA preempts any contrary state law and renders enforceable a written arbitration agreement, if the agreement appears to involve interstate commerce.[2] *See Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280 (11th Cir. 2001).

Courts have construed very broadly the FAA's requirement that an arbitration agreement "involve commerce," so that the slightest nexus with interstate commerce will bring the agreement within the ambit of the FAA. *See Allied-Bruce Terminix Cos.*, 513 U.S. at 268 (construing the reach of the FAA "to limits of Congress' Commerce Clause power"); *Fidelity Warranty Servs., Inc. v. Kidd*, 45 F.Supp. 2d 1284 (N. D. Ala. 1999) ("[FAA] has a broad remedial application where interstate commerce is implicated in [the] slightest degree"). Employment contracts "[involve] commerce" within the meaning of the FAA. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001) (FAA's reach includes employment

---

[2] Section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (emphasis added).

contracts); *Musnick v. King Motor Co. of Ft. Lauderdale*, **325** F.3d 1255, 1258 n.2 (11th Cir. 2003) ("FAA applies to all arbitration agreements involving interstate commerce, including employment contracts") (*citing Circuit City*, 523 U.S. at 113).

3.    Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

The effect of the FAA is to create a body of federal substantive law of arbitrability applicable to agreements within its coverage.  *See Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).  The FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* at 25.  This Court likewise has recognized that the FAA reflects a strong federal policy favoring the enforcement of arbitration agreements.  *See NCR Credit Corp. v. Reptron Elec., Inc.*, 863 F.Supp. 1561, 1563 (M.D. Fla. 1994).  In accordance with this policy, the Supreme Court announced that all doubts regarding arbitrability should be resolved in favor of coverage under an arbitration agreement "unless it can be [stated] with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).  "Doubts should be resolved in favor of coverage."  *Id.*; *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 426 (1985) ("[the federal substantive law of arbitrability] counsels that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration") (internal quotation omitted).

When determining whether a claim falls within the scope of the arbitration provision, as a general rule, the parties' intentions control.  *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *MS Dealer Serv. Corp., Franklin*, 177 F.3d 942 (11th Cir. 1999) (*citing Mitsubishi*, 473 U.S. at 626).  The parties' intentions, however, are construed "with

- 7 -

a healthy regard for the federal policy favoring arbitration." *Mitsubishi*, 473 U.S. at 626. Because "the FAA creates a presumption in favor of arbitrability; [ ] parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *See Ivax Corp. v. B. Braun of Am., 286 F.3d 1309, 1320 (11th Cir. 2002) (internal quotations and citations omitted)*.

Here, Mr. Navas is contractually obligated to arbitrate "any and all disputes and claims arising from and relating to [his] employment with [Cisco]" including "claims for breach of contract" and "claims of discrimination." Arbitration Agreement, at 1. By Mr. Navas's own admission, all of his claims arise out of or relate to his employment with Cisco. Counts I, II and IV all allege employment discrimination. Count III alleges breach of contract. The plain language of the Arbitration Agreement encompasses precisely these claims in terms that mirror those used by Mr. Navas in his Complaint. Not only are the claims labeled so as to fall under the umbrella of the Arbitration Agreement, so too the substance of those claims requires that they be resolved by arbitration.

Count I, labeled "Race, Ethnic, National Origin, and Religious Discrimination" and asserted against Cisco, Mr. Mr. Navas alleges that:

> By purposefully restricting Mr. Navas's promotional opportunities, and by harassing, abusing and finally causing emotional and psychological harm, on account of his race and/or ethnicity, Cisco Systems Inc. has violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.*

Complaint, ¶ 54 (emphasis added).

In Count II, labeled "Reconstruction Era Civil Rights Act Claim" and asserted against both Cisco and the Individual Defendants, Mr. Navas alleges that:

.

- 8 -

> By engaging in a <u>concerted effort to harass and</u> discredit Mr. <u>Navas by fostering a hostile environment</u> Cisco and the other defendants have intentionally, negligently [sic] inflicted emotional distress and deep psychological damage upon Mr. Navas in direct violation of Florida law [sic].

Complaint, ¶ 56 (emphasis added).

Count IV, labeled "Race, Ethnic, National Origin and Religios [sic] Discrimination in Violation of Florida Law" and asserted against Cisco alleges that:

> By purposefully <u>restricting Mr. Navas's promotional opportunities</u>, and by harassing, mentally abusing creating a hostile work environment trying to drive him out of the company <u>on account of his race and/or ethnicity</u>, Defendant Cisco Systems Inc. has violated the Florida Civil Rights Act of 1992.

Complaint, ¶ 61 (emphasis added).

Counts I, II and IV seek redress for Cisco's and/or the Individual Defendants' alleged employment discrimination in the form of "restricting Mr. Navas's promotional activities . . . on account of [Mr. Navas's] race and/or ethnicity." Each of these claims of employment discrimination necessarily "arises from and relates to" Mr. Navas's employment with Cisco. (Arbitration Agreement, at 1.) Moreover, claims of discrimination specifically are itemized as claims that must be arbitrated under the terms of the Arbitration Agreement. (Arbitration Agreement, at 1.)

Count III, labeled "Breach of Contract" and asserted against Cisco, Mr. Navas alleges that:

> By failing to follow its own personnel policies and procedures on evaluating, promoting and providing equal opportunity and by failing to truthfully investigate and reprimand the author(s) of the racial hateful email against Mr. Navas, Cisco Systems Inc. has breached its contractual obligations to Mr. Navas in direct violation of Florida law.

3688383

Complaint, ¶ 58.

Although Count III is labeled "Breach of Contract" Mr. Navas appears rather to allege employment discrimination with this claim.  It matters not, however, under which theory Mr. Navas proceeds, both claims – employment discrimination and breach of contract – undeniably are within the scope of the terms of the Arbitration Agreement and, in fact, are specifically listed as claims subject to arbitration under the Arbitration Agreement.  (Arbitration Agreement, at 1.)  As with his discrimination claims, Mr. Navas's breach of contract claim falls squarely within the scope of the Arbitration Agreement.

It is of no consequence that Mr. Navas alleges statutorily created causes of action.  Such claims are also subject to arbitration.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611 (11th Cir. 2001).  As Justice White noted in *Gilmer*:

> It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA . . . .
>
> "[H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issues.  In this regard, we note that the burden in on [plaintiff] to show that Congress intended to preclude a waiver of a judicial forum for [his or her] claims.

500 U.S. at 26 (citations omitted; emphasis added).

Courts continuously have permitted arbitration of all types of statutory claims, including claims very similar to those alleged by Plaintiff.  *See, e.g., Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 148-50 (concluding that plain language of the ADA allows enforcement of voluntary, prospective agreement to arbitrate ADA claim against school under enrollment agreement); *Seus*

3688383

*v. John Nuveen & Co., Inc.*, 146 F.3d 175 (3d Cir. 1998) (predispute agreements to arbitrate claims under Title VII are enforceable under the FAA); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith*, 170 F.3d 1, 11 (1st Cir. 1999) (Title VII, as amended by 1991 Civil Rights Act, does not prohibit predispute arbitration agreement).[3]

4.    The Individual Defendants Are Entitled to Enforce the Written Arbitration Agreement.

Messrs. Bastian, Robbins, Campbell and Justice are entitled to have the claims against them submitted to arbitration pursuant to the Arbitration Agreement under the principles of both equitable estoppel and agency law.

Non-signatories to an arbitration agreement may nonetheless enforce that agreement where estoppel and/or agency principles apply. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) (estoppel and agency principles permit non-signatories to arbitration agreement to enforce agreement). Estoppel permits non-signatories to receive the benefits of an arbitration agreement where, as here, the allegations against them are of "substantially interdependent and concerted misconduct" with that of the signatories to the agreement. *MS Dealer*, 177 F.3d at 947; *see Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993), ("close relationship" between signatories and non-signatories to arbitration agreement and "intertwined claims" triggers estoppel).

Similarly, non-signatory agents of signatories to an arbitration agreement may compel arbitration where, as here, there is sufficient identity of the parties. *See, e.g., Britton v. Co-op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993); *see also Spurlock v. Life Ins. Co. of Virginia*,

---

[3]   Mr. Navas cannot be heard to say that arbitration is an unduly burdensome means to resolve his employment dispute with Cisco.  It is Cisco's policy to prepay all costs of the arbitration.  *See* Hughes Aff., ¶ 5.

- 11 -

No. CIV.A.98-D-222-N, 2000 WL 1785300, at *3 n.4 (M.D. Ala. Oct. 31, 2000) (holding that agency law principles permit an employee of signatory to arbitration agreement to compel arbitration of fraud claim). Non-signatories to an arbitration agreement may nonetheless enforce the agreement "under agency or related principles, [if] the relationship between the signatory and non-signatory defendants is sufficiently close that only by permitting the non-signatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer*, 177 F.3d at 947.

In sum, where the allegations are of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the other signatories to the contract, and where the non-signatories are agents of one of the signatories, equitable estoppel and agency law principles apply to permit the non-signatories to enforce the arbitration agreement. "Otherwise, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration [would] effectively [be] thwarted." *Id.*

Here, both equitable estoppel and agency principles readily permit the Individual Defendants to invoke the Arbitration Agreement to resolve the § 1981 claims against them. First, estoppel requires that the Individual Defendants be permitted to enforce the Arbitration Agreement. The § 1981 claim, asserted against both the Individual Defendants and Cisco, consists of averments of "substantially interdependent and concerted misconduct." *MS Dealer*, 177 F.3d at 947. Mr. Navas affirmatively alleges that "all Defendants" engaged "in a concerted effort to harass and discredit Mr. Navas." (Complaint ¶ 56) (emphasis added). As Mr. Navas implicitly admits, the claims against the Individual Defendants unquestionably are intertwined and interdependent with the remainder of the discrimination claims against Cisco in Mr. Navas's

- 12 -

Complaint.   Thus, Mr. Navas is estopped to deny the Individual Defendants their right to arbitrate this dispute.   *See MS Dealer,* 177 F.3d at 947.

Moreover, agency law principles permit the Individual Defendants to enforce the Arbitration Agreement.   Mr. Navas affirmatively alleges that the Individual Defendants "are all current management and/or executives, employed by Cisco."   (Complaint ¶ 9.)   As management and executive employees of Cisco, the Individual Defendants are agents of Cisco.   *See, e.g., Busby v. City of Orlando,* 931 F.2d 764, 722 (11th Cir. 1991) (supervisory employees are agents of employer).   If Cisco committed the acts alleged in the Complaint, it could only have done so through its agents, the Individual Defendants.   Thus, there is "sufficient identity" between the parties.   For the same reason, there is a "sufficiently close" relationship between Cisco and the Individual Defendants such that only by permitting the Individual Defendants to invoke the Arbitration Agreement "may evisceration of the . . . arbitration agreement . . . be avoided."   Nowhere does Mr. Navas allege that any of the Individual Defendants acted alone or to further their own individual interests.

To permit Mr. Navas to pursue his claims against the Individual Defendants outside of arbitration would render the Arbitration Agreement meaningless.   This is so because to prevail against Cisco, Mr. Navas must prove that the Individual Defendants somehow violated his rights. This proof necessarily is precisely the same proof that Mr. Navas must put forth to prevail on his claims against Cisco, because Cisco can act only through its agents.   Only by permitting the Individual Defendants to rely on and enforce the terms of the Arbitration Agreement may the strong federal policy in favor or arbitration be given effect.

- 13 -

Accordingly, inasmuch as there is a valid Arbitration Agreement between the parties, and because each of the claims asserted by Mr. Navas against Cisco and the Individual Defendants is subject to the Arbitration Agreement, the Court must compel arbitration of the claims.

**B.      Section 3 of the FAA Mandates a Stay of These Proceedings Pending Arbitration**

Because the parties entered into the written Arbitration Agreement, which expressly and specifically calls for arbitration of the claims raised in Mr. Navas's Complaint, the Defendants are entitled to a stay of further prosecution of the Complaint, pending completion of the agreed-upon arbitration.

Section 3 of the FAA states, in relevant part that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall upon application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3 (emphasis added); *see Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (under the FAA, a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate the issue underlying the district court proceedings); *20th Century Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1436 (M.D. Fla. 1997) (staying proceedings pending arbitration upon proof that parties agreed to arbitrate disputes); *see also Seaboard Coast Line R.R. Co. v. National Rail Passenger Corp.*, 554 F.2d 657, 660 (5th Cir. 1977) ("An applicant for a . . . stay [under 9 U.S.C. § 3] is entitled to obtain it, if he makes a claim (to arbitration) which on its face is one governed by the (applicable) agreement . . . [a]nd the court should grant the stay unless it may be said with positive assurance that the arbitration

- 14 -

clause is not susceptible of an interpretation that covers the asserted dispute.") (internal quotation and citation omitted).

Thus, this Court must stay prosecution of all claims in Mr. Navas's Complaint pending completion of an arbitration held in accordance with the terms of the Arbitration Agreement. As demonstrated above, each of Mr. Navas's claims on its face is governed by the Arbitration Agreement. Accordingly this Court must stay these proceedings pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to compel arbitration and to stay these proceedings pending arbitration.

Respectfully submitted,

By: _____

Fredrick H. L. McClure
Florida Bar No. 147354
PIPER RUDNICK LLP
101 East Kennedy Boulevard, #2000
Tampa, Florida 33602
Telephone: (813) 229-2111
Facsimile: (813) 229-1447
Counsel for Defendants
   Cisco Systems, Inc.
   Bruce Bastian
   Chuck Robbins
   David Campbell
   Rick Justice

And

Amy W. Schulman
Robin C. Tarr
PIPER RUDNICK LLP
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 835-6000

- 15 -

3688383

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U.S. Mail to:

Amado Navas, Pro Se
7810 Greenshire Drive
Tampa, Florida  33634

on this 17th day of June, 2003.

Attorney

- 16 -